# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs October 9, 2012

## JOHN JOSEPH KRATOCHVIL v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2009-B-1893     J. Randall Wyatt, Jr., Judge**

---

**No. M2012-00112-CCA-R3-PC - Filed February 15, 2013**

---

The petitioner, John Joseph Kratochvil, appeals the denial of his petition for post-conviction relief. The petitioner pled guilty to second degree murder and received an agreed to sentence, out of range, of thirty-five years as a multiple offender. On appeal, he contends that his plea was not entered knowingly and voluntarily because he was denied his right to the effective assistance of counsel. Specifically, he contends that trial counsel was ineffective by: (1) failing to explain the difference between Range I and II sentences, sentencing outside of range, and the elements of the crime; (2) failing to inquire, investigate, or explain how the various circumstance in his case might have led to a competent defense involving "heat of passion"; (3) failing to investigate and move to suppress search warrants issued in the case; and (4) failing to inform the petitioner that the prosecution was statutorily required to provide a Notice of Enhanced Punishment within ten days of trial. Following review of the record, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

William Justin Conway (on post-conviction), Nashville, Tennessee; for the appellant, John Joseph Kratochvile.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Katrin Miller, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## Factual Background and Procedural History

The facts underlying the petitioner's conviction, as recited by the State at the guilty plea hearing, are as follows:

On March 21, 2009 [the victim's] mother who lived in the house with [the petitioner and the victim, his wife] on Sunnywood Drive here in Davidson County went to her daughter's guest room where she was sleeping while the [petitioner] was out of town. The door was locked. There was no response, eventually the mother of [the victim] was able to break into the bedroom door and found her daughter lying on the floor deceased.

An autopsy was done on [the victim] and the results were . . . that she had been strangled to death. A police investigation revealed that the burglar alarm in the home had been disarmed at approximately 4:16 a.m. [The petitioner] at the time was in Spartanburg, South Carolina. He, however, came home later that afternoon. The police discovered in addition that there appeared to be forced entry of a window in the back of the house. The master bedroom appeared to be ransacked and the victim's gold and jewelry were all missing.

[The petitioner] arrived home later that afternoon, gave a statement to Detective Greg Corcoran and said that he had been in Spartanburg, South Carolina that weekend to work on a home that they had for sale in that town. He was interviewed another time and also denied killing his wife.

Eventually, on March 11 he gave another statement to Detective Corcoran where he admitted that he did drive from South Carolina during the night, went into the home, strangled his wife, and then drove back to South Carolina. He staged the bedroom to make it appear that a burglary had occurred and took her jewelry and threw it off the side of the interstate somewhere, that jewelry has not been recovered.

Based upon these actions, the petitioner was indicted by a Davidson County grand jury for the first degree murder of his wife. Thereafter, the petitioner entered into a plea agreement which called from him to plead guilty to second degree murder and receive a thirty-five year sentence to be served at 100% as a multiple offender. The plea called for an out of range sentence pursuant to *Hicks v. State*, 945 S.W.2d 706 (Tenn. 1997). Prior to accepting the plea, a hearing was held before the trial court. The court, in great detail,

covered the rights the petitioner would be waiving by pleading guilty, as well as the nature of the crime and potential sentences involved.  In one portion of the plea colloquy, the following remarks were made on the record:

The Court:     So you were charged with first degree murder which is the premeditated murder of another person and carries a sentence upon conviction if the State doesn't seek the death penalty of an automatic life sentence which is a sentence that requires someone to serve 51 years upon conviction, so that is what you were charged with, and that is what the trial would have been on is first degree murder.
You are apparently agreeing to plea[d] guilty to a little bit out of range for a Class A felony which a Class A felony carries 15 to 60 years.  You probably are in range one and it would have been 15 to 25 years if you were convicted of second degree murder, but in order to avoid apparently the first degree murder trial and conviction you are pleading guilty to second degree murder and receiving a 35 year sentence and that is at 100% . . . which means that you would be eligible for parole after you serve 100 percent of that sentence less whatever possible little small credits you might get on that, but it is basically a 35 year sentence at 100 percent, so did you understand that.

The petitioner:     Yes, your Honor.

The Court:     And second degree murder is the knowing and intentional killing of another human being and that is what you are pleading guilty to and do you understand that.

The petitioner:     Yes, you Honor.

The plea was accepted, and a judgment of conviction was entered against the petitioner.  Thereafter, he filed a pro se petition for post-conviction relief alleging that the plea was not entered knowingly and voluntarily because he received ineffective assistance of counsel.  Following the appointment of counsel, an amended petition was also filed.  A hearing was subsequently held on the matter, at which the petitioner, a detective involved in

the case, and trial counsel testified.

The forty-five-year old petitioner testified that originally a different public defender was appointed to his case and represented him for approximately nine months. After that attorney left the public defender's office, trial counsel was appointed. According to the petitioner, although trial counsel visited him seven to nine times in jail, no defense strategy was developed in the case. The petitioner asserted that trial counsel had failed to explain the difference in the elements of first degree murder, second degree murder, and voluntary manslaughter. The petitioner testified that, after researching the issue while in prison, he did not believe that the State could have established premeditation. He did acknowledge that he had concealed the crime by denying his involvement and staging the scene as a burglary. The petitioner testified that he believed that "passion" was greatly at issue in the case based upon the fact that the victim, his wife, was committing adultery, had abused their six-year-old son, and was using family funds for her lover. He acknowledged that he was aware of these facts for some time prior to the murder.

As a second area of defense, the petitioner thought trial counsel should have done more investigation and relied upon the fact that he had hypoglycemia. According to the petitioner, following an incident in jail where he was denied his medication for a time, he began to believe that he had been suffering from a similar attack on the night he committed the killing. According to the petitioner, these attacks made him shake vigorously, made him suddenly angry, and sometimes resulted in his falling down or passing out. The petitioner believed that trial counsel should have investigated this by talking to a diabetic specialistic in an attempt to develop it as a possible defense.

The petitioner also faulted trial counsel for failing to challenge the admission of search warrants issued in the case, as well as his statement to police. According to the petitioner, the search warrant for his home should have been challenged because it failed to denote specific facts which established probable cause to link him to the crime. He did acknowledge that the only piece of evidence taken pursuant to that warrant was a video which he had filmed of his wife in the bathroom. The petitioner also asserted that a second warrant should have been challenged because it was for a search of his person but referred to a search of an address where he was, *i.e.*, the police station. He stated that the consent he gave with regard to the search was invalid as well. In rather confusing testimony, the petitioner appeared to state that he felt his confession should have been suppressed because he was coerced into making it because of the invalid searches.

The petitioner also contended that he never received a notice from the State regarding their intent to seek enhanced punishment. He complains that trial counsel was deficient for failing to ensure that he received this documentation. He contends that his failure to receive

the notice results in his sentence being illegal.

The petitioner's main complaint with regard to trial counsel is that she failed to inform him that he was pleading as a Range II offender. He contends he was told he was a Range I offender, and no other possible ranges were mentioned. He also pointed out that the actual plea agreement did not reference a specific range, although it did note that he was pleading "out of range." According to the petitioner, trial counsel never explained *State v. Hicks* or its application to him. The petitioner did acknowledge that the trial court had informed him that he was a Range I offender but was pleading outside that range, but he maintained that was the first he had heard regarding any ranges. Nonetheless, the petitioner gave specific testimony that he was aware that he was receiving a thirty-five-year sentence at 100%- his only complaint being that he did not know it was as a Range II offender.

Next to testify was Detective Brad Corcoran, the lead detective in the case. He stated that they had developed the defendant as suspect and pursued a case where the motive was his wife's affair with one, possibly two, other men. Detective Corcoran spoke with the men involved, and they confirmed an involvement with the victim.

Detective Corcoran testified that the petitioner signed two separate documents waiving his *Miranda* rights and agreed to speak with him. He further testified that he obtained a warrant and the petitioner's consent to search the home prior to doing so. He testified that he also obtained a warrant to seize the petitioner's watch and bracelet because the medical examiner had seen pictures of them in an interview given by the petitioner and indicated that they could have caused the injuries he observed around the victim's neck.

The last witness called to testify was trial counsel, who stated that she was in fact appointed to represent the petitioner after her colleague left the public defender's office. While she had been slightly involved in the petitioner's case at its inception, trial counsel testified that when she was appointed specifically to the case, she treated it a brand new case. On her first visit with the petitioner, she recalled that she discussed the pending charge, possible lesser-included offenses, the elements of all, and possible sentence ranges. Trial counsel indicated that it was her practice to discuss and explain *State v. Hicks* to defendants in this situation, as the case is often not understood.

Contrary to the petitioner's contention, trial counsel testified that defenses were discussed with the petitioner. She testified that they reviewed the facts in favor of a voluntary manslaughter defense if they proceeded to trial. However, trial counsel was clear that she was somewhat concerned about the viability of that defense in light of the attenuation of the alleged "passion" events from the time of the murder.

Trial counsel testified that she did recall the petitioner informing her that he was hypoglycemic and of an incident while he was in jail when he was denied his medication for a short period. However, she was not made aware how that would play into a defense for the petitioner. Trial counsel did note that she had the petitioner evaluated by a psychologist to see if any mental defenses would be available. She also testified that she felt there were no grounds to support a motion to suppress in the case, although she did discuss the subject with the petitioner.

After hearing the evidence presented, the post-conviction court denied the petition. The petitioner now timely appeals that denial.

**Analysis**

On appeal, the petitioner contends that his guilty plea was not knowingly and voluntarily entered because he was denied the effective assistance of counsel. In evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). In making this determination, the reviewing court must look to the totality of the circumstances. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). Indeed, a

> court charged with determining whether . . . pleas were "voluntary" and "intelligent" must look to various circumstantial factors, such as the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate that guilty pleas be voluntarily and intelligently made. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citing *Alford*, 400 U.S. at 31).

To succeed in a challenge for ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of

attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the petitioner must establish (1) deficient representation and (2) prejudice resulting from the deficiency. In the context of a guilty plea, to satisfy the second prong of *Strickland*, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lockhart*, 474 U.S. at 59; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997). The petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably-based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceeding. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This deference to the tactical decisions of trial counsel, however, is dependant upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). "A trial court's findings of fact underlying a claim of ineffective assistance of counsel are reviewed on appeal under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d)). However, conclusions of law are reviewed under a purely de novo standard, with no presumption of correctness. *Id*. at 458.

## I. Ineffective Assistance of Counsel

The petitioner alleges multiple instances of ineffective assistance of counsel, which he claims led to his pleas being involuntarily an unknowingly entered. Specifically, he argues trial counsel was ineffective for: (1) failing to explain the difference between Range I and II sentences, the significance of *Hicks*, and the elements of the crime; (2) failing to inquire, investigate, or explain how the various circumstance in his case, *i.e.*, the child abuse, the adultery, and his hypoglycemic condition, might have led to a competent defense involving "heat of passion"; (3) failing to investigate and move to suppress a search warrant issued in the case; and (4) failing to inform the petitioner that the prosecution was statutorily required to provide a Notice of Enhanced Punishment within ten days of trial.

### a. Terms of the Agreement

The petitioner first contends that trial counsel failed to properly inform him regarding the terms of his plea agreement. Specifically, he argues he was not informed that he was receiving a Range II sentence and that the application of *State v. Hicks* was not explained.

He also argues trial counsel failed to make him aware of the elements of the charged offense and its lesser-included offenses. The petitioner testified that, at no time prior to the plea hearing, were these matters discussed by trial counsel.

However, trial counsel's testimony stands in direct contradiction to that of the petitioner's. She testified that she specifically informed the petitioner of these facts at a meeting between them. She recalled detailing the elements of the charged offense, as well as the lesser-included offenses. While trial counsel could not specifically recall if she told the petitioner that he would receive a Range II sentence, she testified that it was likely discussed. In its' findings, the post-conviction court accredited the testimony of trial counsel. As has been noted on multiple occasions, it is not the province of this court to reweigh or re-evaluate such determinations made by the trier of fact. *See Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997).

Nothing in the record before us preponderates against the post-conviction court's findings. During the plea colloquy, the court, in great detail, informed the petitioner of the elements of the offenses and specifically that he was pleading out of range. The petitioner acknowledges that he understood and agreed to the out of range sentence. The plea agreement itself denotes that the sentence was out of range. Moreover, at the post-conviction hearing, the petitioner testified that he knew he was accepting a sentence of thirty-five years to be served at 100%. He acknowledged that he was accepting the plea agreement in order to avoid a trial and the risk of a life sentence. No argument put forth by the petitioner can support a findings of deficiency or prejudice.

### b. Failure to Investigate or Explain Possible Defenses

The petitioner also contends that trial counsel was ineffective in that she did not investigate or explain to him how the existing circumstances in his case, *i.e.*, the victim's affair, the child abuse, the credit card usage, might have lead to a defense which could have established the murder was committed in the heat of passion. The petitioner argues that, on the facts in his case, premeditation could not be established. The petitioner also asserts that trial counsel should have conducted further investigation into his hypoglycemic condition, as it could support a defense of involuntary intoxication.

According to the petitioner, no defenses were ever discussed with him by trial counsel. However, trial counsel specifically testified that she had reviewed the possibility of pursuing a "heat of passion" with the petitioner. She testified that she believed that the defense had problems based upon the attenuation of the murder from the stressing events. Again, the post-conviction court accredited trial counsel's testimony that she had investigated the possible defenses in the case and discussed them with the petitioner. We will not reevaluate

such a determination. *See id.*

Contrary to the petitioner's assertions, trial counsel was aware of the importance of his mental state at the time of the murder, as evidence by her decision to have him evaluated for a possible diminished capacity defense. The record establishes that trial counsel investigated the facts of the case and developed the strategy she thought best to pursue if the petitioner proceeded to trial. While aware of the petitioner's hypoglycemia, trial counsel did not believe it a viable defense to pursue in the case. The records further show that the defense strategy was discussed with the petitioner and explained to him, including both the strengths and weaknesses of the theory.

Moreover, in denying relief, the post-conviction court noted:

> [T]he Court finds that there was evidence to suggest that the Petitioner engaged in deliberation and premeditation, rather than operating under a prolonged period of provocation. The Court finds that there was the following evidence to suggest premeditation: the petitioner attempted to fabricate an alibi by informing his district manager at Publix that he was going to his South Carolina home, the Petitioner drove through the night to his home in Antioch, the security system in the home was disarmed, the victim was strangled without waking anyone in the home, the Petitioner concealed the crime by making it appear to be a home invasion, and the Petitioner immediately drove back to South Carolina and disposed of the jewelry that he took from the home. The Court, therefore, finds that the Petitioner failed to prove, by clear and convincing evidence, that he was prejudiced as a result of [trial counsel's] advice concerning trial strategy regarding the potential for the conviction of the lesser-included offense of voluntary manslaughter in this case.

We find nothing in the record which preponderates otherwise. No relief is warranted.

### c. Motion to Suppress

The petitioner next faults trial counsel for failing to file a motion to suppress search warrants issued in the case. On appeal, he appears to challenge only the search warrant which resulted in the seizure of his jewelry. He asserts that the motion to suppress would have been arguably viable because the warrant contained "no nexus between the crime and the seizure of the [petitioner's] jewelry." He bases this argument on the fact that the affidavit portion of the warrant "does not contain any language specific to jewelry or similar instruments which might have caused the abrasions on the victim's neck area."

In denying relief, the post-conviction court stated:

The Court finds that the affiant, Detective Corcoran swore to the following essential facts for the basis of the issuan[ce] of the search warrant: the Petitioner's wife . . . was strangled manually in her home; the Petitioner's wife's mother . . . did not hear any noise during the night; [she] believed the Petitioner was away that night; [the victim] had bruising and various abrasions on her neck and chin; the Petitioner was observed wearing a gold colored bracelet and a silver watch with a locking clasp; the Assistant Medical Examiner stated that jewelry worn by the assailant would be consistent with the injuries to the victim; and Detective Corcoran made several attempts to contact the Petitioner but was unsuccessful. The Court, having reviewed the statement of facts in support of probable cause, finds that there was a sufficient factual basis to issue the search warrant in this case. The Court, therefore, finds that the Petitioner has failed to establish, by clear and convincing evidence, that [trial counsel] was ineffective for failing to file a motion to suppress the search warrant issued on March 9, 2009, or that he was prejudiced by the result of [trial counsel's] inaction.

Again, nothing in the record before us preponderates against those findings. Trial counsel testified that she saw no viable argument to support a motion to suppress. The petitioner has failed to put forth any argument which would support that such a motion would have been successful. Detective Corcoran testified that the jewelry was seized because the medical examiner had said it was consistent with causing specific injuries to the victim. That information, as found by the post-conviction court, is a sufficient nexus to establish probable cause. Thus, the petitioner has failed to carry his burden on this issue.

### d. Notice of Enhanced Punishment

Finally, the petitioner contends that trial counsel was ineffective for not informing him that the State was required to file a notice of enhanced punishment ten days before the scheduled trial date and that "he was entitled to a ten [] day delay from the filing of the Notice before the trial court would accept the plea." In denying relief on this issue, the post-conviction court noted:

In regards to the Petitioner's assertion that [trial counsel] permitted him to enter an illegal plea on the basis that no notice to seek an enhanced punishment was filed by the State, the Court finds that this allegation is also without merit. The Court notes that the Court of Criminal appeals has previously held, in the context of an acceptance of a guilty plea, that the "mere failure to file a

statement [of intent to seek enhanced punishment] under the statute prior to the plea of guilty does not vitiate the plea, where the record shows the appellant was aware of the intent of the State to ask for enhanced punishment and where he bargained on that basis." In this case, the Court finds that the Petitioner bargained for a second-degree murder conviction to avoid a trial and subsequent conviction on the indicted charge of first-degree murder. The Court finds that it is undisputed that the Petitioner is a range I offender but pled guilty to a range II sentence. The Court finds that the failure of the State to provide notice of intent to seek enhanced punishment did not render the range II sentence on the lesser-included charge of second-degree murder illegal in this case. The Court, therefore, finds that the Petitioner has failed to prove, by clear and convincing evidence, that [trial counsel] was ineffective in her representation or that the Petitioner suffered prejudice as a result of [trial counsel] permitting the Petitioner to agree to accept the plea-bargained offer without the State's notice of intent to seek enhanced punishment.

In his brief, the petitioner offers no more than the bare assertion that trial counsel was ineffective on this ground. He puts forth no argument as to why this was deficient performance or caused prejudice. He has failed to put forth any evidence which would preponderate against the post-conviction court's findings. Nothing in the record before us indicates that the petitioner's decision to plead guilty would have been affected by the filing of the notice in this case. The plea agreement reflected the charged offense and sentence. The petitioner saw and signed this document. It reflected an out of range thirty-five-year sentence. That sentence was bargained for in order to avoid a trial and possible life sentence. The petitioner is simply entitled to no relief on this issue.

### e. Voluntariness of Guilty Plea

As noted, the petitioner contends his plea was not entered knowingly and voluntarily based on ineffective assistance of counsel. Having determined that he did not receive ineffective assistance of counsel, his argument must fail. The record establishes that both trial counsel and the trial court explicitly informed the petitioner of the terms and consequences contained within the plea agreement. Following the court's detailed colloquy, the petitioner stated under oath, that he understood and wanted to plead guilty.

A defendant's plea of guilty constitutes an admission in open court that the defendant committed the acts charged in the indictment. *Brady v. United States*, 397 U.S. 742, 748 (1970). The plea, however, is more than an admission; it is the defendant's consent that judgment of conviction may be entered without a trial. *Id*. A defendant's sworn responses to the litany of questions posed by the trial judge at the plea submission hearing represent

-11-

more than simply lip service.  Indeed, the defendant's sworn statements and admissions of guilt stand as witness against the defendant at the post-conviction hearing when the defendant disavows those statements.  We note that in this case the transcript of the plea hearing is strong evidence against and belies the petitioner's contentions.  Following review of the record, we conclude that the petitioner has failed to establish that the proof preponderates against the findings made by the post-conviction court that he received the effective assistance of counsel and that his plea was entered knowingly and voluntarily.  *See State v. Mackey*, 553 S.W.2d 337, 340 (Tenn. 1977).

## CONCLUSION

Based upon the foregoing, the denial of post-conviction relief is affirmed.

_____

JOHN EVERETT WILLIAMS, JUDGE